**F I L E D**

AUG 1 8 2004

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ECLIPSE PROPERTIES, LLC                    CASE NO.  04-01415

DEBTOR                    CHAPTER 11

## APPLICATION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

Now comes RBC Centura Bank ("RBC Centura"), successor in interest to Prism Mortgage Company, by and through counsel, and applies to the court, pursuant to 11 U.S.C. §506(b), for compensation for services rendered and reimbursement of expenses incurred on its behalf by the law firm of Poyner & Spruill LLP in the above-referenced matter.  In support of this Application, RBC Centura shows unto the court the following:

1.      This matter is a core proceeding pursuant to 28 U.S.C. §157, and the court has jurisdiction pursuant to 28 U.S.C. §§151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina.

2.      The Debtor filed a Chapter 11 Bankruptcy Petition on April 14, 2004 and is operating as a Debtor in Possession pursuant to 11 U.S.C. §1107.

3.      RBC Centura is the holder of a Promissory Note ("Note"), Loan No. 046204148-001, executed by the Debtor in favor of RBC Centura in the original principal amount of $3,650,000.00.  The Note is secured by a Deed of Trust and Security Agreement ("Deed of Trust") from the Debtor and The Home Team, Inc. dated October 4, 2001 and recorded in Book 1235, Page 144, Franklin County Registry.  The property described in the Deed of Trust consists

of a tract containing 509.38 acres and a tract containing 1.50 acres.  A copy of the Note is attached hereto as Exhibit A and is incorporated herein by reference.

4.       Prior to the bankruptcy filing, the Debtor defaulted under the Note, and RBC Centura accelerated the balance due.  In  a letter dated June 3, 2003, RBC Centura advised the Debtor that it could payoff the Note in full without incurring attorney's fees and expenses pursuant to NC Gen Stat. §6-21.2.  A copy of the June 3, 2003 letter is attached hereto as Exhibit B and is incorporated herein by reference.

5.       Pursuant to 11 U.S.C. §506(b), a creditor whose collateral exceeds the amount of its debt may apply for approval of costs and expenses, including reasonable attorneys' fees, as provided in the loan agreement, which have been incurred by the creditor in a bankruptcy case. The Note provides in Section 4.1 for recovery by RBC Centura of reasonable attorneys' fees and expenses in the amount of fifteen percent (15%) of the then outstanding principal balance incurred in connection with the collection of the indebtedness.

6.       Poyner & Spruill LLP has performed necessary and valuable legal services on behalf of RBC Centura in the collection efforts of the Note prior to and in this Chapter 11 proceeding.  The services rendered include conferences with representatives of RBC Centura, conferences with the Debtor's attorney and counsel for other creditors, preparation of motions, orders, objections, , and other documents to be filed with the court in this case, as well as participation in all hearings, meetings, and other conferences in connection with this proceeding.

7.       Poyner & Spruill LLP, a business oriented law firm with offices in Rocky Mount, Raleigh, and Charlotte, North Carolina, has attorneys experienced in bankruptcy law and the practice in the Eastern District of North Carolina.

8.    As of August 20, 2004, the anticipated closing date, the balance due under the Note is $3,925,000.00.

9.    RBC Centura requests the approval of compensation for professional services rendered in the amount of $588,750.00, which is fifteen percent (15%) of the outstanding principal owed under the Note.

Wherefore, RBC Centura prays for the court to allow Poyner & Spruill LLP, counsel for RBC Centura, attorney's fees in the amount of $588,750.00 to be paid by the Debtor pursuant to 11 U.S.C. § 507(b) and to grant such other relief as the court deems just and appropriate.

Dated: August __/6__, 2004.

POYNER & SPRUILL LLP

By: _____
David M. Warren
N.C. State Bar No. 12581
Attorneys for RBC Centura Bank
Post Office Box 353
Rocky Mount, NC  27802-0353
Telephone: (252) 446-2341
Facsimile:   (252) 446-4060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ECLIPSE PROPERTIES, LLC                                CASE NO.  04-01415

DEBTOR                                CHAPTER 11

<u>NOTICE OF MOTION</u>

TO:     All parties in interest.

The party represented by counsel below has filed an Application For Allowance of Compensation For Services Rendered and Reimbursement of Expenses with the court ("Pleading").

<u>Your rights may be affected</u>.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

If you do not want to the court to grant relief sought in the Pleading, or if you want the court to consider your views on the Pleading, then on or before August 31, 2004, unless otherwise ordered, you or your attorney must file with the court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing at

U.S. Bankruptcy Court
P.O. Box 1441
Raleigh, NC  27602-1441

If you mail your request, response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

You must also mail a copy to:

David M. Warren, Esq.
Post Office Box 353
Rocky Mount, NC  27802-0353

Eclipse Properties, LLC
9205-101 Baileywick Road
Raleigh, NC  27615-1977

William P. Janvier, Esq.
P.O. Box 911
Raleigh, NC 27602

Bankruptcy Administrator
P.O. Box 3039 - Century Station
Raleigh, NC 27602-3039

and all other parties in interest.

     If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the Pleading at a date, time and place to be later set and all parties will be notified accordingly.

     If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Pleading and may enter an order granting that relief.

Dated: August __16__, 2004.

                    POYNER & SPRUILL LLP

By:    _____
           David M. Warren
           N.C. State Bar No. 12581
           Attorneys for RBC Centura Bank
           Post Office Box 353
           Rocky Mount, NC 27802-0353
           Telephone: (252) 446-2341
           Facsimile: (252) 446-4060

Customer No. _____ 0462_____
Loan No. _____ 0462204148  001

# COMMERCIAL PROMISSORY NOTE
### (Secured, Variable Rate)

$3,650,000.00                                   October _4_, 2001

Master Note

FOR VALUE RECEIVED, the undersigned (whether one or more, "Borrower") promises to pay to PRISM MORTGAGE COMPANY ("Lender"), or order, the sum of THREE MILLION SIX HUNDRED FIFTY THOUSAND AND NO/100 Dollars ($3,650,000.00), or so much thereof as shall have been disbursed from time to time and remains unpaid, together with interest at the rate and payable in the manner hereinafter stated.  Principal and interest shall be payable at the office of Lender or its agent, designee, or assignee at 11011 Richmond Avenue, Suite 850, Houston, Texas  77042, Attention:  Loan Servicing, or such other place as the holder of this Note may from time to time designate in writing.

Article I.  Interest Rate.

Section 1.1.  Rate of Accrual.  Interest will accrue on the unpaid principal balance at the rate set forth in **Section 1.2.1.** until maturity of this Note, whether such maturity occurs by acceleration or on the Maturity Date, and will accrue on any unpaid interest before such maturity and on any unpaid balance owing under this Note, whether principal, interest, fees, premiums, charges and/or costs and expenses, after maturity at the rate set forth in **Section 1.2.2.**  All accrual rates of interest under this Note will be contract rates of interest, whether a pre-default rate or a default rate, and references to contract rates in any loan documents executed and delivered by Borrower or others to Lender in connection with this Note shall be to such contract rates.

Section 1.2.  Interest Rates.

1.2.1.  Pre-Default Rate.  Subject to the provisions of **Section 1.2.2.** below, interest payable on this Note per annum will accrue at the rate of 3.75% **plus** the LIBOR Base Rate.  The "LIBOR Base Rate" is the London Interbank Offer Rate for United States Dollars for a term of one month which appears on Telerate Page 3750, Bloomberg Professional Screen BBAM (or any generally recognized successor method or means of publication) as of 11:00 a.m., London time, two (2) London business days prior to the day on which the rate will become effective. The rate for the first month or part thereof will initially become effective on the date of the Note as shown on the face hereof. Thereafter, the rate will change and a new rate will become effective on the first calendar day of each succeeding month. If for any reason, the London Interbank Offer Rate is not available, then the "LIBOR Base Rate" shall mean the rate per annum which banks charge each other in a market comparable to England's Eurodollar market on short-term money in U.S. Dollars for an amount substantially equivalent to the principal amount due under this Note as determined at 11:00 A.M., London time, two (2) London business days prior to the day on which the rate will become effective, as determined in the Lender's sole discretion. Lender's determination of such interest rate shall be conclusive, absent manifest error.

1.2.2.  Default Rate. Upon the nonpayment of any payment of interest described herein, Lender, at its option and without accelerating this Note, may accrue interest on such unpaid interest at a



**EXHIBIT**

A

rate per annum ("Default Rate") equal to five percent (5.0%) plus the interest rate otherwise applicable hereunder, as set forth in **Section 1.2.1.** Above. After maturity of this Note, whether by acceleration or otherwise, interest will accrue on the unpaid principal of this Note, any accrued but unpaid interest and all fees, premiums, charges, costs and expenses and/or other sums owing hereunder at the Default Rate until this Note is paid in full, whether this Note is paid in full pre-judgement or post-judgement.

    1.2.3.  Variable Rate; Calculation of Interest.

        1.2.3.1. This is a variable rate note. Any change in the rate of interest payable under this Note will equal the change in the variable rate index to which such rate is tied, but the rate at which interest accrues under this Note shall never exceed the maximum contract rate which may be charged to and collected from Borrower under applicable law. Lender shall have no obligation to notify Borrower of adjustments in the rate of interest payable under this Note. Adjustments to the rate of interest will be effective as set forth in **Section 1.2.1** above.

        1.2.3.2. All interest payable under this Note shall be calculated on the basis of the actual number of calendar days elapsed but computed on a daily basis as if each year consisted of three hundred sixty (360) days. In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such advance is made, and the day on which funds are repaid shall be included unless repayment is credited prior to close of business. Payments in federal funds, immediately available in the place designated for payment, received by Lender prior to 2:00 p.m. local time at said place of payment, shall be credited as if received prior to close of business on the day the funds are immediately available; while other payments, at the option of Lender, may not be credited until such payments are immediately available to Lender, in federal funds, in the place designated for payment, prior to 2:00 p.m. local time at said place of payment on a day on which Lender is open for business.

Article II.  Payment Terms.

**Section 2.1.** Interest Payment Terms. Interest shall be payable monthly, in arrears, beginning on November 4, 2001 and continuing on the same calendar day of each consecutive month thereafter until the Maturity Date, when all accrued but unpaid interest is due and payable in full.

**Section 2.2.** Principal Payment Terms; Maturity Date. Principal (and interest if so indicated in **Section 2.1** above) shall be payable in one single payment on April 4, 2002, herein referred to as the "Maturity Date".

**Section 2.3.** Prepayment. This Note may be prepaid in whole, or in part at any time without any prepayment premium.

**Section 2.4.** Application of Payments. All payments made on this Note shall be applied first to payment of all late fees, charges, premiums and costs and expenses due but unpaid under this Note, then to accrued but unpaid interest and finally to principal, in the inverse order of the payment dates therefor, unless Lender determines in its sole discretion to apply payments in a different order. The partial prepayment of this Note, if permitted, shall not result in a payment holiday or any other deferral of any regularly scheduled payments under this Note, all of which shall be made as and when the same are scheduled to be paid.

Article III.  Loan Agreement and Security.

**Section 3.1.** Loan Agreement. If Borrower and Lender have entered into a loan agreement in connection with the loan evidenced by this Note, Borrower shall perform and abide by, as and when so required, each and all of the covenants, terms and conditions imposed upon or applicable to Borrower in said loan agreement.

Page 2 of 7

Section 3.2.  Security Documents.  This Note is secured by the security documents identified on **Exhibit A** attached hereto.  Borrower and all other persons who have executed and delivered a security document to Lender or to another person for Lender's benefit, shall perform and abide by, as and when so required, each and all of the covenants, terms and conditions imposed upon or applicable to them in said documents. Lender shall not have any obligation or responsibility to: (1) protect or preserve the property ("collateral") encumbered by said security documents against the rights of prior third persons having an interest therein, if any; (2) provide information to third persons relative to this Note, any loan agreements or security documents, Lender's security interest in the collateral, or otherwise with respect to Borrower; and/or (3) subordinate its security interest in the collateral to the interests of any third persons or to enter into control agreements relative to the collateral.

Article IV.  Default and Acceleration.

Section 4.1.  Late Charges and Expenses.  Borrower agrees to pay, upon demand by Lender or if demand is not sooner made, on maturity of this Note, whether such maturity occurs by acceleration or on the Maturity Date, for each payment past due for fifteen (15) or more calendar days, a late charge in an amount equal to the greater of  (1) four (4%) percent of the amount of the payment past due or (2) if Lender is not prohibited by applicable law from charging a higher percentage for past due payments, such higher percentage of the amount of the payment past due as Lender, in its discretion, may set from time to time.  If this Note is not paid in full whenever it becomes due and payable, Borrower agrees to pay all costs and expenses of collection, including reasonable attorney's fees in the amount of fifteen (15%) percent of the then outstanding principal balance.

Section 4.2.  Default.  Any of the following shall constitute an event of default ("Event of Default") under this Note:  (1) the failure of Borrower to make when due any payment described herein, whether of principal, interest, or otherwise;  (2) the failure of Borrower to perform any of the other terms and conditions of this Note and/or any of the terms and conditions of any loan agreements and/or security documents executed and delivered by Borrower to Lender, or to another person for Lender's benefit, as and when the same are required to be so performed, or the occurrence of some other default by Borrower under this Note, any loan agreements and/or security documents; (3) the failure of any other person obligated for the payment of this Note, either directly or indirectly, or obligated under any loan agreements and/or security documents to perform any of the terms and conditions imposed upon such other person by any of said agreements and/or documents, as and when the same are required to be so performed, or the occurrence of some other default by such other person under any of said agreements and/or security documents; (4) if Borrower is an individual, the mental incompetency or death of Borrower;  (5) if Borrower is not an individual, the dissolution, liquidation, merger, consolidation, reorganization or termination of existence of Borrower, or if Borrower is a corporation with thirty-five (35) or fewer shareholders, the aggregate transfer of voting shares in Borrower whereby persons not owning on the date hereof, singly or in the aggregate, 50% or more of the voting shares of Borrower, become the owners, singly or in the aggregate, of 50% or more of such voting shares, or if Borrower is a limited or general partnership, any change in a general partnership interest in Borrower, or if Borrower is a limited liability company, any change in a managing membership interest of Borrower; (6) the application for the appointment of a receiver for Borrower or the filing of a petition under any provisions of the United States Bankruptcy Code or other state or federal insolvency proceeding by or against Borrower or any assignment for the benefit of creditors by or against Borrower;  (7) the failure of Borrower to furnish from time to time, at Lender's request, financial information with respect to Borrower; (8) a determination by Lender that it deems itself insecure or that an adverse change in the financial condition of Borrower has occurred since the date hereof; (9) the failure of Borrower to perform or other default by Borrower under any other monetary or non-monetary obligation due, owing or otherwise required to be performed or observed by Borrower to or in favor of Lender; or (10) the

Page 3 of 7

termination of any guaranty agreement or other supporting obligation (inclusive of letters of credit) which applies to this Note or any other security document which applies to this Note.

Section 4.3.  Acceleration.  Upon the occurrence of an Event of Default, or the occurrence of an event which, with the giving of notice or a lapse of time, or both, would become an Event of Default under this Note, the entire unpaid principal balance of this Note and all other amounts owing or to be owing under this Note shall, at the option of Lender, become immediately due and payable, without notice or demand. Failure to exercise the option to accelerate shall not constitute a waiver of the right to exercise same in the event of any subsequent default.

Article V.  Miscellaneous.

Section 5.1.  Interpretation.  In applying, interpreting and construing this Note and its various provisions, the following shall apply:

    (a)  the terms "hereby", "hereof", "herein", "hereunder", and any similar words, refer to this Note;

    (b)  words in the masculine gender mean and include correlative words of the feminine and neuter genders and words importing the singular numbered meaning include the plural number, and vice versa;

    (c)  words importing persons include firms, companies, associations, general partnerships, limited partnerships, limited liability companies, trusts, business trusts, corporations and legal entities, including public and quasi-public bodies, as well as individuals;

    (d)  the term "Note" refers to this Commercial Promissory Note, the term "loan document" refers to this Note, any loan agreements, security documents and other documents and agreements executed and delivered to Lender in connection with this Note, and the term "Borrower" refers to all signatories of this Note collectively and severally, as the context of this Note requires, and all signatories of this Note shall be and the same are jointly and severally liable hereunder; and

    (e)  wherever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Note.

Section 5.2.  Maintenance of Records by Lender.  Lender is authorized to maintain, store and otherwise retain the loan documents in their original, inscribed tangible forms or records thereof in an electronic medium or other non-tangible medium which permits such records to be retrieved in perceivable forms; that records of the loan documents in a non-tangible medium which are retrievable in perceivable forms shall be the agreements of Borrower to the same extent as if the loan documents were in their original, inscribed tangible medium and such records shall be binding on and enforceable against Borrower notwithstanding the same are in non-tangible forms and notwithstanding the signatures of the signatories thereof are electronic, typed, printed, computer generated, facsimiles or other reproductions, representations or forms; and that Lender's certification that non-tangible records of the loan documents are accurate and complete copies or reproductions of the original, inscribed tangible forms shall be conclusive, absent clear and convincing evidence of the incorrectness of said certification, and such non-tangible records or reproductions thereof shall be deemed originals and have the same force and effect as the original, inscribed tangible forms.

Page 4 of 7

Section 5.3. <u>Due Diligence; No Fiduciary Relationship</u>. Borrower acknowledges and represents that it has relied upon its own due diligence in making its own independent evaluations of the purposes for which the proceeds of this Note will be used and the business affairs and financial condition of any and all persons obligated for the payment of this Note, and Borrower will continue to be responsible for making its own appraisals of such matters. Borrower has not relied upon and will not hereafter rely upon Lender for any information for such appraisal or other assessment or review and, further, will not rely upon any such information which may now or hereafter be prepared by Lender for any appraisals regarding the purposes for which the proceeds of this Note will be used or regarding any person obligated for payment of this Note, whether directly or indirectly. The relationship of Lender to Borrower is that of a creditor and/or lender to an obligor and/or debtor; and in furtherance thereof and in explanation thereof, Lender has no fiduciary, trust, guardian, representative, partnership, joint venturer or other similar relationship to or with Borrower and no such relationship shall be drawn or implied from this Note, any loan agreements and/or security documents and/or any of Lender's actions or inactions hereunder or thereunder, or with respect hereto or thereto – and, Lender has no obligation to Borrower or any other person relative to administration of the indebtedness evidenced by this Note and/or the collateral, or any part or parts thereof.

Section 5.4. <u>Credit Investigation; Sharing of Information</u>. Lender is irrevocably authorized by Borrower to make or have made such credit investigations as it deems appropriate to evaluate Borrower's credit, personal or financial standing and employment, and Borrower authorizes Lender to share with consumer reporting agencies, creditors and others its experiences with Borrower and other information in Lender's possession relative to Borrower.

Section 5.5. <u>Right of Set-off; Recoupment</u>. Upon the occurrence of an Event of Default, or the occurrence of an event which, with the giving of notice or a lapse of time, or both, would become an Event of Default under this Note, Lender is authorized and empowered to apply to the payment hereof, any and all money deposited in Lender in the name of or to the credit of Borrower, without advance notice, and is authorized to offset any obligation of Lender to Borrower to the payment hereof and is authorized to exercise its rights of recoupment relative to Borrower.

Section 5.6. <u>Cross-Collateralization</u>. Property securing other loans of Borrower owing to Lender may secure this Note and this Note may also be supported by separate guaranty agreements and other supporting obligations (inclusive of letters of credit).

Section 5.7. <u>Waiver</u>. Borrower waives presentment, demand, protest and notice of dishonor, waives any rights which it may have to require Lender to proceed against any other person or property, agrees that without notice to any person and without affecting any person's liability under this Note, Lender, at any time or times, may grant extensions of the time for payment or other indulgences to any person or permit the renewal, amendment or modification of this Note or any other agreement executed and delivered by any person in connection with this Note, or permit the substitution, exchange or release of any security for this Note and may add or release any person primarily or secondarily liable, and agrees that Lender may apply all moneys made available to it from any part of the proceeds from the disposition of any security for this Note either to this Note or to any other obligation of Borrower to Lender, as Lender may elect from time to time. No act or inaction of Lender under this Note shall be deemed to constitute or establish a "course of performance or dealing" that would require Lender to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances.

Section 5.8. <u>Waiver of Statute of Limitations</u>. Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations or repose as a defense to enforcement by Lender of its rights and remedies under this Note or as a defense to the validity and enforceability of this Note.

Section 5.9.  Jury, Venue, Jurisdiction.  This Note shall be deemed to have been executed and delivered in North Carolina regardless of where the signatories may be located at the time of execution and shall be governed by and construed in accordance with the substantive laws of the State of North Carolina, excluding, however, the conflict of law provisions thereof.  Borrower:

> (a) **to the extent permitted by law, waives any right to a trial by jury in any action arising from or related to this Note;**

> (b) irrevocably submits to the jurisdiction of either (1) the Superior Courts of North Carolina located in Nash County, North Carolina or (2) the United States District Court for the Eastern District of North Carolina over any action or proceeding arising from or related to this Note;

> (c) irrevocably waives, to the fullest extent Borrower may effectively do so, the defense of improper venue and/or an inconvenient forum to the maintenance of any such action or proceeding; and

> (d) agrees that the exclusive forum for any legal action or proceeding against Lender, or any of Lender's directors, officers, employees, agents or property, concerning any matter arising out of or relating to this Note shall be in the Superior Courts of North Carolina located in Nash County, North Carolina.

Nothing in this Section shall affect or impair Lender's right to serve legal process in any manner permitted by law or Lender's right to bring any action or proceeding against Borrower in the courts of any other jurisdiction.

Section 5.10.  Successors and Assigns.  This Note shall apply to and bind Borrower's and Lender's heirs, personal representatives, successors and assigns.  All references in this Note to Lender shall include the holder hereof and this Note shall inure to the benefit of any holder, its successors and assigns; and, Borrower waives and will not assert against any transferee or assignee of this Note any claims, defenses, set-offs or rights of recoupment which Borrower could  assert against Lender, except defenses which Borrower cannot waive.  Borrower acknowledges that Customer Numbers and Loan Numbers may be added to this Note after execution and delivery of this Note by Borrower and if there is a section denoted "LENDER USE ONLY," the information under such section may also be completed by Lender after execution and delivery of this Note.  The insertion of such information by Lender shall not affect the validity of this Note or the liability of Borrower hereunder.  In addition, in the event the date of this Note is omitted, Borrower consents to Lender inserting the date for administrative purposes of identifying this Note and such insertion shall not affect the validity of this Note or the liability of Borrower hereunder.

Section 5.11.  Master Note.  If this Note is designated herein as a MASTER NOTE or is denoted on Lender's records as a MASTER NOTE, then this Note evidences a line of credit and Borrower shall be liable for only so much of the principal amount as shall be equal to the total of the amounts advanced to or for Borrower by Lender from time to time, less all payments made by or for Borrower and applied by Lender to principal, and for interest on each such advance, fees, premiums, charges and costs and expenses incurred or due hereunder, all as shown on Lender's books and records which shall be conclusive evidence of the amount owed absent a clear and convincing showing of gross negligence or gross misconduct.

The undersigned has executed this Note as of the day and year first above stated.

ECLIPSE PROPERTIES, LLC

By: _____
Richard B. Glass
Manager


By: _____
John M. Toomey
Manager

# EXHIBIT A
## TO
## COMMERCIAL PROMISSORY NOTE
(Description of Security Documents)

List Below all Security Documents (Include Name of Document, Parties and Date):

1.  Deed of Trust of even date herewith between Eclipse Properties, LLC and The Home Team, Inc. (Grantor) C.B. Services Corp. (Trustee) and PRISM Mortgage Company (Beneficiary), relating to property in Franklin County, North Carolina.

2.  Assignment of Leases, Rents and Profits of even date herewith between Eclipse Properties, LLC and The Home Team, Inc. (Assignor) and PRISM Mortgage Company (Assignee).

4.  Security Agreement from Eclipse Properties, LLC to PRISM Mortgage Company.



**POYNER&SPRUILL** LLP
ATTORNEYS-AT-LAW

David M. Warren
Attorney-at-Law

Direct Dial: 252.972.7112
dmwarren@poynerspruill.com

www.poynerspruill.com

Other offices: Charlotte, Raleigh

June 3, 2003

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**AND FIRST CLASS MAIL**

Eclipse Properties, LLC
c/o Mr. Richard B. Glass, Manager
2308 Sunnystone Way
Raleigh, NC  27603

  Re: Promissory Note from Eclipse Properties, LLC to Prism Mortgage Company
     dated October 4, 2001 in the original principal amount of $3,650,000.00

Dear Mr. Glass:

  This firm has been retained by RBC Centura Bank ("RBC") to assist in the collection of money owed.  The above referenced promissory note ("Note") has been assigned to RBC and is in default.  In accordance with the terms of the Note, RBC hereby accelerates the balance due under the Note and declares the entire balance of principal, interest and applicable late charges to be due and payable immediately.  Demand is hereby made for payment of the full indebtedness. The amount of principal, accrued interest and late charges due and payable as of June 3, 2003 is $3,941,346.88.  The interest continues to accrue at the rate of $579.62 per day.

  Please pay the balance due plus interest through the date of payment to the undersigned prior to 5:00 p.m. on June 16, 2003.  Unless you notify me in writing within thirty (30) days of receipt of this letter, the amount of this debt will be presumed to be valid.  If you notify me within thirty (30) days that the debt, or any portion thereof, is disputed, I will mail verification of the debt to you.

  Pursuant to North Carolina General Statutes Section 6-21.2 and other relevant law, the provisions relating to the payment of attorneys' fees in the Note shall be enforced unless payment of the outstanding balance set forth above is received by the date stated above.  If payment is not made within that time, this matter will be collected through legal action and attorneys' fees in the amount of 15% of the outstanding balance will be added to the outstanding balance of the Note for collection as stated above.  However, if the entire outstanding balance is paid within that time, the obligation to pay attorneys' fees will not be enforced.

**EXHIBIT**

tabbies

B

ROCKYMOUNT/022592-003/306843 v.1

130 South Franklin Street, Rocky Mount, NC  27804  •  P.O. Box 1801, Rocky Mount, NC  27802.0353  •  252.446.2341 Tel  •  252.972.7045 Fax



**POYNER☒SPRUILL** L.L.P.

ATTORNEYS-AT-LAW

Mr. Richard B. Glass
June 3, 2003
Page 2

This letter is an attempt to collect a debt and all information will be used for that purpose.

Very truly yours,

David M. Warren

DMW:ajd

cc:     Mr. Karl Jamail
        Mr. Larry Schulgen

## CERTIFICATE OF SERVICE

I, the undersigned, of Poyner & Spruill LLP certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, I served a copy of the foregoing Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses and Notice of Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses on::

> Eclipse Properties, LLC
> Attn:  Officer or Managing Agent
> 9205-101 Baileywick Road
> Raleigh, NC  27615-1977
>
> William P. Janvier, Esq.
> P. O. Box 911
> Raleigh, NC  27602
>
> Marjorie K. Lynch, Esq.
> P. O. Box 3039
> Raleigh, NC  27602-3039
>
> A. Lee Hogewood, Esq.
> Margaret R. Westbrook, Esq.
> Kennedy Covington Lobdell & Hickman, L.L.P
> P.O. Box 1070
> Raleigh, NC  27602-1070
>
> Attached "Exhibit A" (mailing matrix)

by depositing same in the United States mail, first class, postage prepaid.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: August ___16___, 2004

POYNER & SPRUILL LLP

By: _____
David M. Warren
N.C. State Bar No. 12581
Attorneys for RBC Centura Bank
Post Office Box 353
Rocky Mount, NC 27802-0353
Telephone: (252) 446-2341
Facsimile:  (252) 446-4060

Brian Toomey
408 Fox Hollow Lane
Annapolis, MD  21403

IRS
ATTN:  Special Procedures
320 Federal Place
Greensboro, NC  27402

Reed Fountain
Young Moore and Henderson
3101 Glenwood Ave., Ste. 200
Raleigh, NC  27612

Carl Wald
12104 Ballybrook Ct.
Raleigh, NC  27614

Joel Moulin, Golf Architect
1212 Moulin Way
Apex, NC  27523

Roman & Karen Pollvka
2616 NE 37th Drive
Fort Lauderdale, FL  33308

Clearwater Group, Ltd.
9205 Baileywick Rod., Ste. 101
Raleigh, NC  27615-1977

John & Marie Toomey
130 Sherburn Road
Severna Park, MD  21146

S.T. Wooten
P.O. Box 2408
Wilson, NC  27894

Crowley & Associates
2018 S. Main Street, Ste. 806
Wake Forest, NC  27587

Keystone Consulting Group
4426 Louisburg Rd.
Raleigh, NC  27616

Steven & Linda Wald
132 Richardson Rd.
Trenton, NJ  08691

Mike King
Kennedy Covington – 19th Floor
434 Fayetteville Street Mall
Raleigh, NC  27602

Surety Land Title
2607 Oberlin Road
Raleigh, NC  27608

Employment Security Commission
P.O. Box 26504
Raleigh, NC  27611

Morris & Carol Glass
12104 Ballybrook Ct.
Raleigh, NC  27614

TEC Utilities Supply, Inc.
3733 Conquest Drive
Garner, NC  27529

Foresom, Inc.
200 Greenlawn Rd.
Vestal, NY  13850

N.C. Dept. of Revenue
Office Services Div., Bankruptcy
P.O. Box 1168
Raleigh, NC  27602

TFG Golf Services
1600 Heritage Club Ave.
Wake Forest, NC  27587

Franklin County
215 E. Nash Street
Louisburg, NC  27549

Prism Mortgage Co.
11011 Richmond Ave., 8th Floor
Houston, TX  77042

The Home Team, Inc.
15 Riders Court
Franklinton, NC  27525

Howard Kohn
711 Harvey Street
Raleigh, NC  27608

Pryzwansky & Cook
5700 Six Forks Road
Suite 201
Raleigh, NC  27609

Underground Construction Inc.
P.O. Box 664
Garner, NC  27529

W. Walt Jordan
905 Bromley Way
Raleigh, NC  27615

W.E. Rouse, Jr. & Elizabeth Rouse
317 Woodcliff Road
Raleigh, NC  27609